UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61554-CIV-MARRA/JOHNSON

DONNA LANE,

Plaintiff,

vs.

BROWARD COUNTY,
FLORIDA,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Broward County's Motion for Summary

Judgment (DE 27).  The motion is fully briefed and ripe for review.  The Court has carefully

considered the motion and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to

interrogatories and reasonably inferred therefrom in a light most favorable to the non-moving

party, for the purpose of this motion, are as follows:

Defendant Broward County ("Defendant" "the County") hired Plaintiff Donna Lane

("Plaintiff" "Lane") in 1995 as the Assistant Director of the County's Division of Support

Enforcement ("SED"). (Lane Dep. at 10, Ex. 1, attached to DE 27.)  In 2000, Plaintiff was

appointed Acting Director of SED. (Lane Dep. at 11.)  In 2002, she was appointed Director of

SED by then County Chief Financial Officer ("CFO"), Phil Allen. (Lane Dep. at 11-12; Allen

Dep. at 6, Ex. 2, attached to DE 29.)  SED collected child support and alimony in Broward

County and also served as the depository of all records in child support cases in Broward County. (Lane Dep. at 14.)

In all Florida counties, other than Broward, support enforcement was (and still is) performed by the State. (Michael Geoghegan Decl. ¶ 4, Ex. 3, attached to DE 27.)  During a budget workshop and budget hearing in 2006, the Board of County Commissioners discussed eliminating SED.  Ultimately, the Board decided not to eliminate SED during the 2006-07 budget.  (Michael Geoghegan Decl. ¶ 5.)  However, during a budget workshop in June 2007, the Board discussed a report prepared by the Office of Management and Budget that analyzed the operations of SED. (Michael Geoghegan Decl. ¶ 6.)  The Board subsequently directed County staff to develop a plan to transition the respective SED functions over to the State of Florida and the Clerk of Courts.  (Michael Geoghegan Decl. ¶ 7.)  In August 2007, the Board voted to eliminate SED effective October 1, 2007.  The Board also voted to temporarily transfer SED's collection function to the County's Human Services Division until it could be transferred to the State of Florida and to transfer the depository function to the Broward Clerk's Office. (Michael Geoghegan Decl. ¶ 8.)  As a result of that decision, the positions of all SED employees were eliminated. The County saves approximately $1 million dollars annually as a result of the elimination of SED. (Michael Geoghegan Decl. ¶ 9.)  In August 2007, Plaintiff was officially notified that her position was being eliminated due to the decision of the Board to eliminate SED for organizational reasons.  She was also advised the County would work with her so she could obtain another County position. (Michael Geoghegan Decl. ¶ 10.)

As Director of SED, Plaintiff was an at-will employee. (Kevin Kelleher Decl. ¶ 3, Ex. 4, attached to DE 27; At-Will Employment Form, Ex. 5, attached to DE 28.)   When SED was

2

eliminated, Kevin Kelleher, the Assistant Director of the Human Resources Division of Broward County, and other Human Resources personnel met with Plaintiff.  They also exchanged numerous emails, circulated Plaintiff's resume and contacted various division directors in an effort to secure Plaintiff another position within the County. (Kelleher Decl. ¶ ¶ 4-5.)  During that time period, the County continued to pay Plaintiff her director-level salary of approximately $106,000, even after her position had been eliminated, until she accepted a lower-paying position as Special Projects Coordinator III at the Division of Solid Waste. (Kelleher Decl. ¶ ¶ 7-8.)

Plaintiff's educational background includes a law degree from the University of New Brunswick Law School.  As an attorney, she worked in private practice for over ten years and served as a Judge in the Provincial Division in Ontario, Canada.   Plaintiff's resume identifies her areas of expertise as "budget development and management," "accounting procedures and internal controls," "strategic planning," "application of technology," "diverse union contract compliance," "personnel organization and management," and "creative process re-engineering for efficiency." (Lane Resume, Ex. 17, attached to DE 27-10.)

Plaintiff's Complaint alleged discrimination based on the elimination of the SED, the County's decision to reduce her salary while an African-American employee's salary was maintained despite a demotion, and its failure to hire her for the following County positions:

1) Assistant Director of Risk Management

The job description for this position requires a minimum of "six years insurance industry experience of which two must in self insured and self administered governmental entity risk management programs and four years or more claims management programs and four years or more claims management experience or any combination or relevant training or experience."

3

(Def. Resp. to Pl. First Set. of Interrogatories 2(a), Ex. 7, attached to DE 27; Assistant Director of Risk Management Job Description, Ex. 16, attached to DE 28.)  Preferred applicants would also have a State of Florida All Line Adjuster's License, a State of Florida 2-20 Insurance Agent's License, or an Associate of Risk Management designation, a Chartered Property and Casualty Underwriter designation or other Risk Management designation. (Assistant Director of Risk Management Job Description.)   Darlene George, the director of the Division of Risk Management, offered the position to Danielle French.  Ms. George states that Ms. French was "extremely qualified" based on her decade of experience as a worker's compensation attorney, including three years as the lead worker's compensation attorney for the County.  In addition, Ms. French, as a member of the Florida bar, was authorized to adjust insurance claims for loss or damage. (Decl. of Darlene George  ¶¶ 2, 5-6.)

Ms. French, who is Asian, was born in 1966.  (Def. Resp. to Pl. First Set. of Interrogatories 1(a).)  Ms. French's resume did not indicate whether she possessed a valid State of Florida 5-20 all lines adjuster's license or any of the preferred license or risk management designations listed on the job descriptions. (Michael Chasin Dep. at 43.)   This position was filled without being advertised. (Chasin Dep. at 42.)  Instead, it was filled as a direct appointment. (George Decl. ¶ 5.)  A person appointed under a direct appointment must at least meet the minimum qualifications as set forth in the position specification and job announcement. (Chasin Dep. at 53.)

### 2) Assistant Director of Administration, Port Everglades

Pia Thompson, the Director of Business Administration, selected Bryan Thabit, a 47 year old white male, based on his contract management experience, numbers intensive background,

knowledge of technology, and diversity of his management experience. (Thompson Dep. at 35,

Ex. 10, attached to DE 29; Def. Resp. to Pl. First Set. of Interrogatories 1(b).)  At the time he

applied, Mr. Thabit had served as business administrator and then associate director of the

County's Libraries Division for approximately five years.  In those positions, he prepared and

managed the Division's $70 million annual budget; developed and managed contracts between

the Division and other governmental agencies and implemented new technology and other

business processes. He held a master's degree in accounting and was a certified public

accountant.  (Thabit resume, Ex. 20, attached to DE 28.)   Mr. Thabit received the highest

evaluation score of anyone who interviewed for the job; i.e., 91.89.  Plaintiff's score was 83.

(Rating Sheets, Ex. 21, attached to DE 28.)   Mr. Thabit's father previously worked with Phil

Allen, the former County CFO. (Allen Dep. at 10.)

According to Plaintiff, she received a telephone call from Danny Kelley, the human

resources officer at the Port Everglades, who stated that Mr. Kelleher had mentioned her as a

possibility for the assistant director of business at Port Everglades. (Lane Decl. ¶ 10; Sept. 28,

2007 email from Lane to Kelleher, Ex. 5, attached to DE 36.)  Mr. Kelley stated that Plaintiff was

qualified for the position.  (Kelley Dep. at 7, attached to DE 41.)

### 3.  Assistant Director of Civil Right Division

The job description for the assistant Director of Civil Rights Division position required

"six years of progressively responsible experience in community/human relations which deals

with ethnic relations, fair housing and fair employment practices, including two years experience

in supervisory and administrative aspects of the work or any equivalent combination or relevant

training and experience." (Job Description, Ex. 22, attached to DE 28.)  Due to budgetary

constraints and administrative needs, the position was reclassified and downgraded to a Human

Rights Investigator III position. (Earlene Horne Decl. ¶ 5.)  This decision saved the civil rights

division money and the civil rights division had a greater need for an additional investigator

position than it did for an assistant director position. (Earlene Horne Decl. ¶ ¶ 6-7.)

Plaintiff points to a September 14, 2007 email she received from Mr. Kelleher advising

her of the opportunity to interview for the assistant director of civil rights division position.

(Sept. 14, 2007 email from Kelleher to Lane, Ex. 7, attached to DE 36.)  Mr. Acton sent Plaintiff

an email stating that the civil rights position was "suitable" based on existing vacancies and her

background. (Lane Decl. ¶ 13; December 6, 2007 email from Acton to Lane, Ex. 6, attached to

DE 36.)  Plaintiff interviewed with Gwendolyn Warren, the then-director of the Office of Equal

Opportunity, concerning the position of assistant director of the Civil Rights Division, based on

Mr. Kelleher's email and a later conversation in which he stated that the job could be the "best

solution" for her.  Ms. Warren told her that she had no questions for her and she was told the

same when she was interviewed by the director, Ms. Earlene Horne. (Lane Decl. ¶ 9.)  At least

until December 13, 2007, Broward County continued to interview for the assistant director

position. (Interview Schedule, Ex. 8, attached to DE 36.)   In fact, the Civil Rights Division also

interviewed Adrienne Britto, who had also been displaced from her position as a division

director.  Ms. Britto is African-American. (Horne Decl. ¶ 4.)

### 4.  Director of Animal Control

The Director of Animal Control position required a "minimum six years in progressively

responsible experience in animal care and regulation and shelter management, including high

level supervisory and administrative experience, with an emphasis on animal care program

development, or any equivalent combination or training and experience." (Def. Resp. to Pl. First Set. of Interrogatories ¶ 2(d);  Director of Animal Control Job Description, Ex. 23.)  The position was filled through an open, competitive recruitment.  (Beth Chavez Decl. ¶ 5.)  Plaintiff did not apply for the position.  (Beth Chavez Decl. ¶ 7.)  Ray Sim, who had seven years experience in animal care and regulation with local government, was hired for the position. (Beth Chavez Decl. ¶ 10; Sim Resume, Ex. 24, attached to DE 28.)

     5.  Director of Professional Standards.

The Director of Professional Standards position required a "minimum ten years experience in auditing and conducting investigations including supervisory experience or any equivalent combination of relevant training and experience."(Def. Resp. to Pl. First Set. of Interrogatories 2(f); Job Description; Ex. 25, attached to DE 28.)   The position has been vacant since 2005. (Chasin Dep. at 50.)

     6.  Assistant Director of Records

With respect to the Assistant Director of Records position, the job description requires "thorough progressively responsible experience in records management, including experience in the supervisory and administrative aspects of the work or any equivalent combination of training and experience" (Job Description, Ex. 26, attached to DE 28.)  On or about June 2007, when the Board voted to eliminate SED, the Division of County Records began to train Tom Kennedy, a 52 year old white male, to become Assistant Director of the Division of County Records.  The decision to promote him was taken pursuant to the Division's succession plan. ((Def. Resp. to Pl. First Set of Interrogatories ¶ 1(g); Sue Baldwin Decl. ¶ ¶ 4-5; HR Memorandum, Ex. 27, attached to DE 28.)  Mr. Kennedy was appointed in June 2008.  (Baldwin Decl. ¶ 6.)  Mr.

Kennedy had almost three years experience as the records automation manager and more than 12 years experience as the liaison from the County's Office of Information Technology to the Records Division. (Baldwin Decl. ¶ 4.)  The County states that Plaintiff had no records management experience. (Def. Resp. to Pl. First Set. of Interrogatories ¶ 2(g).)

Plaintiff states that she overheard Ms. Baldwin state that she wanted to handpick a new assistant director at county records who was "a lot younger" so that she would not have to go through the selection process again.  (Lane Decl. ¶ 17.)   Plaintiff points out that the current director of county records is both a lawyer and former director of SED. (Lane Decl. ¶ 16.)

Plaintiff did not apply for the Risk Management, County Records or Professional Standards positions because she did not know they were available.  (Lane Decl. ¶ 15.)   There is, however, a letter dated July 15, 2008 from Plaintiff to James R. Acton, Jr., the Human Resources Director of the Broward County Commission, stating that Plaintiff wishes to apply for the Assistant Director of County Records position. (July 15, 2008 Letter from Lane to Acton, Ex. 11, attached to DE 36.) Mr. Acton replied on July 25, 2008, stating that the position had been filled pursuant to "planned succession management." (July 25, 2008 Letter from Acton to Lane, Ex. 11, attached to DE 36.)

In March 2008, Plaintiff accepted a position as a Special Projects Coordinator III at the Division of Solid Waste. Her salary was set at $69,146.00, which was the top of the salary range for the position.  (Kelleher Decl. ¶ 8; Broward County Combined Pay Plan Classification, Ex. 6, attached to DE 28.)  Plaintiff requested that her salary be "red-circled" so that she could retain the salary of approximately $106,000.00 she was paid as Director of SED.  (Kelleher Decl. ¶ 9.)  Red-circling is the mechanism by which a County employee is permitted to earn a salary above the salary range of his/her position. (Kelleher Decl. ¶ 10.)  According to Kelleher, Plaintiff's request for red-

circling was denied in accordance with County policy that employees who accept a lower paying position in lieu of a layoff will earn a salary within that position's salary range. (Kelleher Decl. ¶ 11.)

Plaintiff claims that an African-American employee, Alicia Antoine, was also demoted but allowed to keep her manager-level salary.   The County states that Ms. Antoine was permitted to keep her salary as a regional manager after her demotion because her salary was within the salary range of the position into which she was demoted. (Kelleher Decl. ¶ 12; Broward County Combined Pay Plan Classification, Ex. 15, attached to DE 28.)   However, Plaintiff points to a letter from Mr. Acton that states that Ms. Antoine's situation was not the result of a reduction in force, but the result of a settlement agreement. (Acton Letter, Ex. 1, attached to DE 36.)

As evidence of Broward County's bias against older women, Plaintiff points to a meeting she attended in which Mr. Acton presented a report that detailed how expensive it was to provide health insurance for older workers, especially women. (Lane Aff. ¶ 19, attached to DE 35.)  In addition, Plaintiff notes that during a July 2007 meeting, Mr. Geoghegan, the County's chief financial officer, observed that Plaintiff was 60 years old and suggested, "Maybe you don't want to work any more." (Lane Aff. ¶ 8.)

II.  Summary Judgment Standard

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the non-moving party

bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion.  Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted).  The Court must "avoid weighing conflicting evidence or making credibility determinations."  Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  Rather, the determination is whether there are any genuine issues of fact which should properly be resolved by the fact finder because they can be resolved in favor of either party. Anderson, 477 U.S. at 250.

III.  Legal Discussion

Plaintiff sues for age discrimination under Florida Statute § 112.044, the Florida Civil Rights Act, Florida Statute § 760.10 ("FCRA"), and the Age Discrimination in Employment Act, 29 U.S.C.

10

§ 623 ("ADEA"). In addition, she also sues for race and gender discrimination under the FCRA and Title VII of the Civil Rights Act of 1964 ("Title VII").[1]

Plaintiff's claims are based on circumstantial evidence as opposed to statistical proof or direct evidence of discriminatory intent.  Where direct evidence of discrimination is unavailable, a plaintiff may establish a prima facie case of discrimination through circumstantial evidence under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973); see Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

Under this framework, the plaintiff must "create an inference of discrimination through [her] prima facie case."  Vessels v. Atlanta Independent School System, 408 F.3d 763, 767 (11th Cir. 2005). If a prima facie case has been shown, then the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802.  The defendant's burden is one of production; it need not persuade the court that it was actually motivated by the proffered reasons. See Chapman v. A1Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (internal citations and quotations omitted).

If the defendant satisfies the burden of production, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were

_____

[1] Title VII and ADEA claims are governed by identical standards.  See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999).  Federal cases interpreting Title VII and the ADEA apply to cases arising under the FCRA.  Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998); Brown v. Distrib. Co. of West Palm Beach v. Marcell, 890 So. 2d 1227, 1230 n.1 (Fla. Dist. Ct. App. 2005).  Cases brought pursuant to Florida Statute § 112.042 require that Plaintiff show that she was discriminated against "solely because of" her race or sex and that she is the most competent individual who is able to perform the services required. Housing Auth. of City of Sanford v. Billinglsea, 464 So. 2d 1221 (Fla. Dist. Ct. App. 1985).

not the real reasons for the adverse employment action.  See Chapman v. A1 Transport, 229 F.3d 1012, 1024 (11th Cir. 2000); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

With respect to establishing a prima facie case of discrimination on a failure to hire claim, the plaintiff must establish four elements.  These elements are: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she was denied the position and (4) the position remained open or was filled by a person outside her protected class.  See E.E.O.C v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002); Vessels v. Atlanta Independent School System, 408 F.3d 763, 768 (11th Cir. 2005) (failure to promote case).[2]

"[I]f a plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason."  Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006).  Next, "[a] plaintiff must introduce significantly probative evidence showing that the asserted reason is merely

----

[2] The Court is aware that, with respect to the fourth element of the prima facie case, there are "two conflicting lines of precedent" in the Eleventh Circuit.  Walker v. Mortham, 158 F.3d 1177, 1188 (11th Cir. 1998).  The first line of precedent, which dates back to a 1980 case, Crawford v. Western Elec. Co., Inc., holds that the plaintiff must establish that the position was filled by a person who is not a member of the plaintiff's protected class.  Crawford v. Western Elec. Co., Inc., 614 F.2d 1300 (5th Cir. 1980); Walker, 158 F.3d at 1193.  The subsequent line of precedent, first established in Perryman v. Johnson Prods. Co., holds that the plaintiff must establish both that the position was filled by a person who was not a member of the protected class and who possessed equal or lesser qualifications.  Perryman v. Johnson Prods. Co., 698 F.2d 1138 (11th Cir. 1983).  Recent decisions by the Eleventh Circuit have followed both lines of precedent.  Compare Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001) (relative qualifications required) with Vessels, 408 F.3d at 768 (relative qualifications not part of prima facie case).

a pretext for discrimination. A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Id. at 1163 (internal citations and quotation marks omitted); Joe's Stone Crabs, 296 F.3d at 1273 ("[s]hould the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry proceeds to a new level of specificity, in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination") (internal quotation marks omitted).

    1.  Assistant Director of Risk Management

    The Court begins by observing that the record evidence shows that Plaintiff will be unable to demonstrate that she was qualified for this position.  This position required a minimum of six years insurance industry experience of which two must be in self-insured and self-administered governmental entity risk management programs, and four years or more claims management experience or any combination or relevant training or experience.  (Assistant Director of Risk Management Job Description, Ex. 16.)  Preferred applicants would also have a State of Florida All Line Adjuster's License, a State of Florida 2-20 Insurance Agent's License, or an Associate of Risk Management designation, a Chartered Property and Casualty Underwriter designation or other Risk Management designation.  (Id.)  Plaintiff's resume identifies her areas of expertise as "budget development and management," "accounting procedures and internal controls," "strategic planning," "application of technology," "diverse union contract compliance," "personnel organization and management," and "creative process re-engineering for efficiency." (Lane Resume.) Her experience includes her directorship of the support enforcement division as well as her legal experience as an attorney and judge in Canada.  (Id.)  Simply put, Plaintiff lacks any experience in the insurance field.  In other words, on the face of the job description, Plaintiff is not qualified.  See Ramsay v. Broward

County Sheriff's Office, No. 05-61959-Civ, 2008 WL 111304, at * 8 (S.D. Jan. 8, 2008) (the plaintiff who lacked one year of managerial experience in social services field was not qualified for position requiring that experience); Wheatley v. Baptist Hosp. of Miami, Inc., 16 F. Supp. 2d 1356, 1361 (S.D. Fla. 1998) ("[t]he undisputed fact that Plaintiff had either minimal relevant experience or none at all prevents Plaintiff from establishing that he was qualified for the position offered.").

In response, Plaintiff does not state that she is qualified for this position. Instead, she merely argues that Danielle French, the 43-year old Asian woman selected for the position, did not meet the qualifications either. (Resp. at 11, 14.) However, Ms. French's resume demonstrates she was more qualified than Plaintiff. Indeed, Ms. French possessed more than a decade of experience as a workers' compensation attorney, including three years experience as the lead workers' compensation attorney for the County.[3] Furthermore, because of her admission to the Florida bar, Ms. French was authorized to adjust insurance claims for loss or damage.[4] (George Decl. ¶ 6; French resume.)

Plaintiff also argues that she did not know this position was available, that the County secretly recruited for this position, and that "it appears to have been filled without complying with the Minimum Process Standards contained in the Broward County Administrative Code." (Resp. at 8-9.) In support, Plaintiff cites to the Broward County Administrative Code § 14.305. What is

---

[3] To the extent that Plaintiff claims that the she was qualified for this position based on the portion of the job description that states "any combination or relevant training or experience," the Court notes that even assuming Plaintiff was qualified, Ms. French was more qualified based on her workers' compensation experience.

[4] By highlighting Ms. French's superior qualifications, the County has also established its legitimate business reason for hiring Ms. French over Plaintiff. Plaintiff has failed to establish that the County's decision to hire Ms. French was pretextual. See Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001). ("a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer.")

lacking, however, is record evidence in the form of depositions, affidavits, etc. that demonstrates how this code was violated.  See Leigh v. Warner Bros., 212 F.3d 1210, 1217 (11th Cir. 2000) (To survive summary judgment, opposing affidavits must set forth specific facts showing that there is an issue for trial; unsupported conclusory affidavits have no probative value in opposing summary judgment).  However, even assuming Plaintiff had evidence to support this allegation, it would not necessarily indicate discrimination.  See Springer v. Convergys Customer Management Group, Inc., 509 F.3d 1344, 1350 (11th Cir. 2007) citing Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995) ("[t]he mere fact that an employer failed to follow its own internal procedurals does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual").  In sum, Plaintiff has not presented sufficient record evidence to raise a genuine issue of material fact relating to discrimination for the County's failure to hire her for this position over Ms. French.

### 2.  Assistant Director, Port Everglades

As conceded by the County in its reply memorandum, there is "admittedly some inconsistency in testimony from the County as to whether Plaintiff met the minimum qualifications for the job."  Specifically, the County notes that its "staffing manager, whose job it is to qualify applicants for positions, has testified that she did not meet the minimum qualifications, [ ] while the Port's Human Resources official has said that she did." (Reply at 5.)  Based on this testimony, and given that the Court must construe the facts in a light most favorable to Plaintiff, the Court finds the County has not met its burden of demonstrating that there is no genuine issue of material fact that

Plaintiff was not qualified for this position.[5]  See  Fadael v. Palm Beach County School Dist., No. 06-81008-Civ, 2008 WL 4500700, at * 4 (S.D. Fla. Oct. 2, 2008) ("Although establishing a prima facie case will be Plaintiff's burden at trial, at the summary judgment stage, it is Defendant's burden to show that there is no disputed issue of fact regarding Plaintiff's prima facie case."); see also Clark, 929 F.2d at 608 (the defendant must point to "materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden.") Thus, the Court will assume for purposes of this motion that Plaintiff was qualified for this position.

Next, the County points to what it considers to be the superior qualifications of Bryan Thabit, the 47-year old white male hired for this position.  The County notes that Mr. Thabit had served as business administrator and associate director of the County's libraries division for approximately five years. Those positions required him to prepare and manage a $70 million budget, develop and manage contracts between the division and other governmental agencies and implement new technology and business processes. (Thabit Resume.)  He had also previously served as chief financial officer and assistant comptroller for the Broward County Clerk of Courts. (Id.).  He possesses a Master's Degree in Accounting and is a Certified Public Accountant. (Id.) In comparison to other applicants who interviewed for the position, Mr. Thabit received the highest evaluation score of 91.89 whereas Ms. Lane's score was 83. (Rating Sheets/Interview Notes.)    Based on this evidence, the Court finds that the County has established a legitimate, non-discriminatory reason for

---

[5] The Court rejects the County's interpretation of Ms. Lane's statement, made in an email sent after her interview, that she was "willing to learn any new skills required" (September 28, 2007 email from Lane to Kelleher) as conclusive evidence that she lacked the necessary qualifications to do the job.  Read in the context of the entire email, the Court finds that a reasonable factfinder could conclude that Plaintiff meant to convey her enthusiasm towards taking on a new position.

hiring Mr. Thabit.

In making an argument that this reason is pretextual, Plaintiff states that "Bryan Thabit - a Port outsider who got the job that the Port Director, a long-time acquaintance of Thabit's father, said was being held open after Lane's interview so persons from within the Port community could interview for it" (Resp. at 7). This reason, however, does not demonstrate that the County acted with discrimination by hiring Mr. Thabit over Plaintiff. If anything, it suggests that the Port Director favored Mr. Thabit based on his relationship with Mr. Thabit's father. Assuming <u>arguendo</u> that Mr. Thabit was hired based on his father's connections to the Port Director, nothing about that decision is actionable as discrimination against Plaintiff. <u>Cf. Platner v. Cash & Thomas Contractors, Inc.</u>, 908 F.2d 902, 905 (11th Cir. 1990) ("However unseemly and regrettable nepotism may be as a basis for employment decisions in most contexts, it is clear that nepotism as such does not constitute discrimination under Title VII.")[6]  Thus, for the foregoing reasons, the evidence is insufficient to raise a genuine issue of material fact.

    3.  Civil Rights Position

_____

[6] In addition, Plaintiff claims that because her view of the evidence is that she is qualified for the Port Everglades position and the County's view of the evidence is that she is unqualified, she has shown the County's legitimate, non-discriminatory reason; <u>i.e.</u>, Mr. Thabit's qualifications, to be pretextual. This argument confuses factual evidence with legal argument. To demonstrate pretext, Plaintiff must point to "significantly probative evidence" that demonstrates the reason provided by the County was "false and that discrimination was the real reason" for the County's decision. <u>Brooks</u>, 446 F.3d at 1163. Instead, Plaintiff has engaged in speculation and guesswork on this point and therefore cannot defeat the County's motion for summary judgment. <u>See</u> <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651, 658 (5th Cir. 1996 ) ("Guesswork and speculation simply cannot serve as a basis for sending a case to a jury."); <u>Hedberg v. Indiana Bell Telephone Co., Inc.</u>, 47 F.3d 928, 931-32 (7th Cir.1995) ( "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in original); <u>Snair v. City of Clearwater</u>, 817 F. Supp. 108, 113 (M.D. Fla.1993) ("Speculative evidence is insufficient to enable the non-moving party to avoid summary judgment.").

Significantly, Plaintiff does not point to any record evidence demonstrating that this position remained open or was filled by a person outside her protected class.  Instead, the undisputed record evidence shows that this position was never filled and was reclassified to a lower-level position (i.e., Investigator III) in an effort to conserve resources and better serve the needs of the department.  As such, Plaintiff has not generated a factual dispute on an essential element of her prima facie case. See Weber v. American Express Co., 994 F.2d 513, 516 (8th Cir. 1993) (failure to establish prima facie case when employer did not seek to fill position or seek applicants); Carlisle v. Missouri Dept. of Mental Health, No. 4:05CV2415SNL, 2007 WL 172376, at * 7 (E.D. Mo. 2007) (prima facie case not established when "defendant did not fill these positions and plaintiff has failed to offer any evidence that defendant did actually fill these positions with individuals from outside the protected class"); Bradley v .England, 502 F. Supp. 2d 259, 268 (D.R.I. 2007) (prima facie case not established when "vacancy announcement was cancelled, and no one was hired to fill the vacant positions").

Moreover, the County has come forward with a legitimate, non-discriminatory reason for not hiring Plaintiff for the assistant director of civil rights; i.e., that the position was downgraded to an investigator position in an effort to save financial resources and achieve better operations. See Amos v. Tyson Foods, Inc., 153 Fed. Appx. 637, 645 (11th Cir. 2005) (legitimate and non-discriminatory reason established when alteration of overtime schedule was implemented to save costs); Prieto v. City of Miami Beach, 190 F. Supp. 2d 1340, 1353 (S.D. Fla. 2002) (cost-cutting measures are legitimate and non-discriminatory).  Significantly, Plaintiff does not offer evidence that challenges this explanation.  Instead, she states that the women who interviewed her for the position were black and that they "bl[ew] [her] off" and refused to ask her any questions during her interview.  Furthermore, Plaintiff contends that these women searched for months for a new director.  Based on

18

these assertions, Plaintiff believes a jury could find that "black-vs-white racial motivation was afoot in [her] rejection." (Resp. at 7, 11, 14.)   However, the fact that Plaintiff believes she was "blown off" by the interviewers does not provide any evidence of discriminatory intent or that the County's reason for not hiring Plaintiff was pretextual.  See Brooks, 446 F.3d at 1163 quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir.1993) ("To avoid summary judgment the plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination.")  Notably, to the extent any inference could be drawn from the race of the interviewers, it is eliminated by the fact that a similarly situated African-American woman also interviewed for the position and was not hired.

    4.  Director of Animal Control

The record evidence shows that Plaintiff will be unable to demonstrate that she was qualified for this position.  The job requires a "minimum six years in progressively responsible experience in animal care and regulation and shelter management, including high level supervisory and administrative experience, with an emphasis on animal care program development, or any equivalent combination or training and experience." (Ex. 12 at ¶ 8; Director of Animal Control Job Description, Ex. 23.)  As demonstrated by Ms. Lane's resume, she possessed none of this experience.  (Lane Resume.)

Moreover, the position was filled through open, competitive recruitment. (Beth Chavez Decl. ¶ 5.)  It is undisputed that Plaintiff did not apply for the position.  (Beth Chavez Decl. ¶ 7.)  Therefore, she cannot establish this element of the prima facie case.  See Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1346 (11th Cir. 2003) ("[a] general interest in being rehired without submitting an application is not enough to establish a prima facie case of age discrimination when

the defendant-employer has publicized an open position"); cf. Vessels, 408 F.3d at 768 ("where an employer does not formally announce a position, but rather uses informal an subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position-only that the employer had some reason to consider him for the post").

Lastly, there is no record evidence to raise issues of fact as to whether the County had a legitimate business reason to hire Mr. Sim or that the reason for hiring Mr. Sim was pretextual.  As highlighted by Mr. Sim's resume, he possessed seven years experience in animal care and regulation with local government. (Beth Chavez Decl. ¶ 10; Sim Resume.)  Significantly, Plaintiff does not even make any argument in her response memorandum challenging the County's request for summary judgment on this point.  The Court assumes that Plaintiff concedes that summary judgment ought to be granted on this point for the County.

### 5.  Director of Professional Standards

Once again, the record evidence shows that Plaintiff will be unable to demonstrate that she was qualified for this position.  This position required a "minimum of ten years in experience in auditing and conducting investigations including supervisory experience." (Director of Professional Standards Job Description.)  Based on Ms. Lane's resume, she lacked this experience.  (Lane's Resume.)

In response, Plaintiff states the following: (1) "while [this position] sounds like a perfect job for a former judge and a veteran administrator, [the County's Rule 30(b)(6) witness,] cold [sic] not say why it has not been filled. Nor could [he] testify whether Lane's administrative, legal and judicial backgrounds would qualify her for it.  Nor does he know who is supervising the investigators, for whom Broward County continues to advertise, although it will not even give Plaintiff the courtesy

of an interview" (Resp. at 10) and (2) "[this] job for which she would appear qualified, for which [the County's 30(b)(6) witness] could not say she was not qualified, but that has not been filled, even though [the witness] does not know why, or even who is supervising the investigators of whom the directors is supposed to be in charge" (Resp. at 12).

The Court is unable to discern what argument Plaintiff is attempting to raise here.  With respect to her qualifications, Plaintiff has only stated "she would appear qualified" and the County's witness "could not say she was not qualified"  However, the statements that Plaintiff relies upon to make that argument are the following:

> Q:   Would Ms. Lane's experience as a provisional judge, a municipal official, and director of support enforcement qualify her for that job?
>
> A:   If you allow me a moment to re-familiarize myself with the job, Ms. Lane's resume does not evidence experience in auditing with respect to investigations. I would leave that for a subject matter expert to determine.

(Chasin Dep. at 52.)

In other words, Plaintiff has not pointed to any evidence that she meets the qualifications for the position.  As such, the Court concludes that Plaintiff has not presented sufficient record evidence to raise a genuine issue of material fact that she can state a prima facie case.[7]

### 6.  Assistant Director of Records

Taking the facts in the light most favorable to the Plaintiff, as the Court must on a motion for summary judgment, the Court will assume that Plaintiff is qualified for this position.  The Court draws this conclusion based on the fact that SED served as depository of all record in child support

---

[7] The County does not present a legitimate business reason for its failure to hire Plaintiff. The Court does note that the County states that the position remains unfilled.

cases in Broward County.[8] (Lane Dep. at 14.)   Moreover, the current Director of Records, Susan Baldwin, is, like Plaintiff, both a lawyer and a former director of SED. (Lane Decl. ¶ 16.)

With respect to its hiring decision, the County points to the superior qualifications of  Tom Kennedy, a 52 year old white male who was appointed pursuant to the Division's succession plan. Mr. Kennedy possessed four years experience as the County's Records Automation Manager and more than 12 years experience as the liaison from the County's Office of Information Technology to the Records Division.  (Baldwin Decl. ¶ 5; HR Memorandum; Kennedy Resume.)

Plaintiff advances the following evidence in support of her contention that a jury could find that the County's articulated legitimate reason for hiring Mr. Kennedy over Plaintiff  is pretextual.  She states the succession plan used to hire Mr. Kennedy was illegitimate based on Plaintiff having overheard Ms. Baldwin stating, around the time that the former assistant director announced her retirement, that Ms. Baldwin planned to pick a new assistant who was "a lot younger" so that she would not have to go through the selection process again. (Lane Decl. ¶ 17.)  The County dismisses the significance of Ms. Baldwin's statement, noting that the Division of County Records began to train Mr. Kennedy to become the assistant director of records in June of 2007 (Baldwin Decl. ¶ 4), which was well before August of 2007 when Plaintiff was notified that her position as SED director would be eliminated. (Geoghegan Decl. ¶ 10.)

The Court concludes that a reasonable jury could find that the County acted with a discriminatory motive when it hired Mr. Kennedy.  Specifically, a jury could conclude that the County sought to fill the position with an individual who was not nearing retirement age.  By hiring

---

[8] The Court notes that the County argues that Plaintiff lacks record management experience.

Mr. Kennedy, the County eliminated any opportunity that Plaintiff, a 60 year old applicant closer to retirement age, would have had to apply for the position.  In other words, a jury could find that the County wrongfully filled the position with a discriminatory purpose of preemptively precluding an older worker from applying for and obtaining the position.  Accordingly, the Court finds that Plaintiff has defeated the County's motion for summary judgment on this point.

   7.  Red-Circling Claim

   Red-circling is a term used to describe when an employee is permitted to earn a salary above the established salary range of a position. (Kelleher Decl. ¶ 10.)  The County states that Plaintiff accepted a job as a Special Projects Coordinator III at the Division of Solid Waste with a salary of $69,146.00, which was the top of the salary range for the position. (Kelleher Decl. ¶ 8.)  Her request for red-circling was denied in accordance with the County's policy that employees who accept a lower-paying position in lieu of a layoff will earn a salary within that position's salary range. (Kelleher Decl. ¶ 11.)  The County asserts that Alicia Antone's salary was not red-circled when she was demoted.  Instead, she was permitted to retain her salary as regional manager after her demotion because her salary was within the salary range of the position into which she was demoted.  (Kelleher Decl. ¶ 12.)   Based on these facts, the County states that Plaintiff and Ms. Antone were not "similarly situated" and therefore Plaintiff cannot maintain a disparate treatment claim.  See, e.g., Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) ("[t]he plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects.")

   In response, Plaintiff states that Ms. Antone's salary was red-circled.  The only evidence to which Plaintiff points in support of her claim is an email from Mr. Acton, the Human Resources Director of Broward County, that states the following:

With respect to your request for your salary to be red-lined, please be advised that consistent with the County's policy, the rate of pay for an employee who is placed in a lower level position in lieu of a layoff shall be a rate within the pay range of the lower classification. The County has consistently applied this policy and others have accepted lower positions in lieu of layoff and received decrease in pay.  The situation you referenced in your email was a reduction-in-force, and was the result of a settlement agreement.

(March 12, 2008 email from Acton to Lane.)

Significantly, this email does not mention Ms. Antone by name.  However, even assuming that this email addressed Ms. Antone's situation, the Court does not see how any interpretation of this email can be read to suggest that Ms. Antone's salary was red-circled.   Moreover, while Plaintiff makes much of the inconsistency between Mr. Kelleher's declaration which states that Ms. Antone's salary was not red-circled and Mr. Acton's email which states that Ms. Antone's situation was the result of a settlement agreement, the Court simply does not  understand why those two facts would necessarily be mutually exclusive.  In other words, the Court sees no reason, based on the record presented, why Ms. Antone could not have been given her position as a result of a settlement agreement and not received a red-circled salary.  This evidence is insufficient to raise a genuine issue of material fact.

8.  Miscellaneous Items

Plaintiff points to a statement by Michael Geoghegan, the County's chief financial officer, to Plaintiff that she was 60 years old and that maybe she no longer wanted to work (Lane Decl. ¶ 8.)  Based on this record, however, the Court is unable to determine the significance of this statement. To begin, the Court does not know the role of Mr. Geoghegan vis-a-vis Plaintiff.  For example, was he a decision-maker with respect to any of Plaintiff's claims of discrimination?  See Holifield v. Reno, 115 F.3d 1555, 1563-64 ("[t]he biases of one who neither makes nor influences the challenged

24

personnel decision are not probative in an employment discrimination case.")  The same is true with respect to Plaintiff's statement that she once attended a meeting where Mr. Acton presented a report detailing how expensive it was to provide health insurance for older workers, especially women. Plaintiff does not provide a date of this meeting and does not provide the report as evidence.  In any event, the significance of either of these statements is meaningless given that the County retained Plaintiff, sought to find her another position, and ultimately hired her as a Special Projects Coordinator III.[9]

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Broward County's Motion for Summary Judgment (DE 27) is **GRANTED IN PART AND DENIED PART.**  Plaintiff may proceed to trial solely on her claim that the County discriminated against her based on age in its failure to hire her for the Assistant Director of Records position.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 17th day of December, 2009.

_____

KENNETH A.  MARRA
United States District Judge

---

[9] Although Plaintiff's Complaint raised a discrimination claim based on the County's removal of Plaintiff from her position as Director of Support Enforcement Division, Plaintiff did not respond to the County's motion for summary judgment on this point.  Thus, the Court assumes that Plaintiff concedes that summary judgment is warranted for the County on this point.